[Civ. No. 9889. Second Appellate District, Division Two.—September 14, 1934.]

COLONIAL MUTUAL COMPENSATION INSURANCE COMPANY LIMITED (a Corporation), Petitioner, v. E. FORREST MITCHELL, as Insurance Commissioner, etc., Respondent.

Walter L. Bowers and W. Wallace Trau for Petitioner.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

STEPHENS, P. J.—Petitioner duly organized under the Workmen's Compensation Insurance Act as a limited mutual company. It applied to the respondent for a certificate of authority tendering for approval securities and cash in an amount of $25,000. May 22, 1934, respondent submitted the application to the attorney-general and thereafter the last-named official advised the insurance commissioner that a company commencing business must deposit a minimum of cash or securities in the amount of $100,000. Whereupon respondent refused petitioner the certificate of authority

upon the sole ground that, as directed by the attorney-general, he would require $100,000 in cash, or securities, it being conceded that otherwise the certificate should issue and that the value of the securities offered amounted to $25,000. A demurrer to the petition was interposed.

It appears that since 1917 the Insurance Commissioner, acting upon advice of the attorney-general, has continuously permitted companies to commence the business sought to be done by petitioner upon deposit of $25,000; that when petitioner made its application there were eleven workmen's compensation insurance carriers operating in this state, each one of which began with a deposit of $25,000, which amount remains unchanged as to seven, and as to none has the amount been raised to more than $33,000; that in issuing permits upon this basis the Insurance Commissioner has at all times acted upon the advice of the attorney-general as to the sufficiency of these initial deposits. The law has not undergone any change in the sections of the act here in question within the period since 1917.

The issue here presented requires that we construe sections 1 and 11 of the Workmen's Compensation Insurance Act enacted in 1917.

The title of the act and section 1 read as follows: ''An act to provide for the protection of beneficiaries of workmen's compensation insurance policies against the default or insolvency of insurance carriers issuing such policies by requiring such carriers to provide security for the payment of such compensation. (Approved May 9, 1917; Stats. 1917, p. 292.)

''Section 1. Every insurance carrier, except the state compensation insurance fund, transacting the business of workmen's compensation insurance in this state, shall on the first day of October, A. D. 1917, file in the office of the insurance commissioner of this state a bond in favor of said insurance commissioner as trustee for the beneficiaries of awards of compensation rendered by the industrial accident commission, executed by said carrier and some surety company or companies approved by said insurance commissioner and authorized to transact the business of suretyship in this state. Said bond shall be in an amount not less than the reserve for outstanding losses of said insurance carrier on compensation insurance in this state on December 31, A. D.

1916, calculated as prescribed by the laws of this state, nor for more than double the amount of said reserve, but in no case for less than the sum of one hundred thousand dollars.''

Section 11 provides: ''Any compensation insurance carrier may, in lieu of said bond and subject to the same conditions, deposit with the state treasurer, through the insurance commissioner, from time to time as may be demanded by said commissioner, cash or approved interest-bearing securities readily convertible into cash, equal to the reserves for outstanding losses required by section six hundred two (a) of the Political Code at the time of said deposit, on the compensation business of said carrier in the State of California, calculated as hereinbefore provided, as security for the payment of its obligations on said business done in this state, and said deposit shall not be withdrawn except upon the written order of the insurance commissioner in payment of compensation claims, but shall be forthwith payable by the state treasurer to the insurance commissioner upon such order; provided, that any such deposit, or any remainder thereof, may be repaid to such carrier upon satisfactory showing to the insurance commissioner that every liability to pay compensation shall have been reinsured with a solvent carrier or fully paid and discharged. Said deposit shall be used only for the payment of compensation claims so long as there shall remain unpaid any such claim or any part thereof.''

It appears that the correct construction of these sections is as the attorney-general has heretofore construed them and as the Insurance Commissioner has applied them, requiring and holding that a carrier before being allowed a permit to begin business may furnish a bond in the sum of $100,000 as provided in section 1, or may deposit cash or securities as allowed by section 11, in which event $25,000 in such cash or securities has been held sufficient at the outset to insure payment of ·its obligations on business to be done immediately in this state and to qualify under the requirement that such deposit shall ''equal the reserves for outstanding losses required by section six hundred two (a) of the Political Code''.

Respondent now for the first time, under the legal advice of the attorney-general, has concluded that the enactment requires that if the applicant for a permit elects to deposit

cash or securities under section 11 instead of furnishing the bond provided by section 1, he must produce and deposit $100,000 worth of cash or securities.

We are convinced that the past ruling and not the present holding of the attorney-general is the correct one. It would require a strained construction to reach a different conclusion. When section 11 provides: "Any compensation insurance carrier may, in lieu of said bond and subject to the same conditions 'deposit cash or securities readily convertible into cash' ", it cannot be doubted that it was the legislative intent that such deposit in cash or securities should take the place of the bond mentioned in section 1 for all purposes. The object of both is clearly to provide "for the payment of its obligations on said business done in this state"; the basis for calculation in making such provision apparently is "the reserve for outstanding losses of said insurance carrier". Where a bond is furnished under section 1, it is considered proper to require that it should be at least in the amount of such reserves, but no more than double such amount. But where cash or securities readily convertible into cash is deposited pursuant to section 11, it is only required that the deposit be "equal to the reserves for outstanding losses", etc. Such difference between the amount of a bond and a cash deposit is customary and the reasons justifying it too obvious to require statement here.

Section 11 makes no mention of any specific sums to be deposited except as above quoted. If it had intended that the cash deposit be $100,000 regardless of the amount of reserves, doubtless it would have so stated in apt language. That such omission was intentional seems clear. There could be no logical reason for such a deposit. The experience of the commissioner's supervision of carriers demonstrates this. Although having full authority to require an increase of the amount of the deposit if necessary to carry out the expressed purpose of the act, it appears that no substantial increase above the $25,000 initially made has been so required of the eleven carriers at present operating in this state. Respondent concedes that under his construction of these sections, after the first year of a carrier's doing business, the amount of his deposit might be reduced to perhaps $25,000. This being so, why it would be desirable to compel $100,000 to be placed on deposit in the beginning is not

apparent nor suggested by respondent. ■ The court is not justified in reading a provision into the law which is not found in its language, and for which no logical reason exists. But respondent leans for support on the words "and subject to the same conditions" in section 11, where it is provided that cash or securities may be deposited in lieu of the bond. There is nothing in this language indicating what the amount of the deposit shall be. The conditions mentioned undoubtedly consist of those provisions for use of the bond for the purposes for which it was intended, namely, for the protection of beneficiaries under the workmen's compensation insurance policies, and the ultimate and timely payment to such beneficiaries of the awards made such beneficiaries by the industrial accident commission. The deposit merely takes the place of the bond. For example, if a judgment were entered under section 1, it would include all legal costs, including reasonable attorney's fees, which would be collectible from the carrier or from the surety on the bond; so it would, only more simply and directly, from the deposit of cash or securities. No doubt also the deposit would, after thirty days lapse from date of the carrier becoming insolvent or having a receiver appointed for it, become available at once for the payment of awards as provided in section 1, in like instances as to liability on the bond. These and similar provisions are the "conditions" intended in section 11, to which we have adverted.

The intent towards elasticity of the act in allowing reduction of the deposit so long as payment of "compensation claims" is secured is emphasized by the provision of section 11: "provided that any such deposit, or any remainder thereof, may be repaid to such carrier upon satisfactory showing to the insurance commissioner that every liability to pay compensation shall have been reinsured with a solvent carrier or fully paid and discharged". This and the history of the administration of the law admittedly true as alleged in the petition is wholly inconsistent with the unsupported claim by respondent that any other interpretation of section 11 than one requiring the deposit of $100,000 in securities would render fruitless the efforts of the legislature to protect the wage earners.

■ The insurance commissioner is rightly and effectually given plenary power to protect the payment of awards

for compensation to the wage earner throughout the act, and in particular by the provision of section 11 that the deposit in lieu of the bond may "from time to time, as may be demanded by the commissioner", be made. Beyond what the legislature has here enacted, all that is necessary to complete the protection of the wage earner is that degree of vigilance by the insurance commissioner which the law may properly expect of every public officer. He may at any time, within the exercise of his own reasonable discretion, require such additional deposit as will fully protect the wage earner and insure the payment of awards to him made under other provisions of the Workmen's Compensation Act.

If any ambiguity existed here, the long-continued interpretation of the law by the officials called upon to administer it, with no ill results and no exception to such interpretation by the legislature, would be a strong factor tending to uphold such prior interpretation. (*Godward* v. *Board of Education*, 94 Cal. App. 160 [270 Pac. 725]; *Comstock* v. *Davis*, 44 Cal. App. 275 [186 Pac. 380]; *Riley* v. *Thompson*, 193 Cal. 773 [227 Pac. 772]; *Noyes* v. *Paul Jones & Co.*, 270 Fed. 121.)

Let the peremptory writ issue as prayed.

Desmond, J., concurred.