[Civ. No. 10915. First Appellate District, Division Two.—November 29, 1938.]

THE PEOPLE, Respondent, v. MONTEREY COUNTY ICE AND DEVELOPMENT COMPANY (a Corporation), Appellant.

Wyckoff, Gardner & Parker and Hubert Wyckoff, Jr., for Appellant.

U. S. Webb, Attorney-General, Earl Warren, Attorney-General, and W. R. Augustine, Deputy Attorney-General, for Respondent.

SPENCE, J.—Plaintiff brought this action to recover taxes, interest and penalties alleged to be due from defendant under the Retail Sales Tax Act of 1933 (Stats. 1933, p. 2599), on sales of ice made by defendant to certain lettuce packers. The cause was tried by the court sitting without a jury and judgment was entered in favor of plaintiff. Defendant appeals from said judgment.

■ The only issue made by the pleadings was whether the sales were retail sales within the meaning of the act. Subdivision (c) of section 2 of the act defines "retail sale" as follows: "A 'retail sale' or 'sale at retail' means a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property". The trial court found that the sales in question were not sales for the purpose of "resale in the form of tangible personal property" and were therefore retail sales. The sole contention of the defendant on this appeal is that said findings are without support in the evidence.

Preliminarily it may be stated that all of the material facts concerning the transactions between appellant and the lettuce packers and between the lettuce packers and their customers were in evidence. It therefore appears unnecessary to discuss the provisions of sections 17 and 31 of the act relating to the presumption that all gross receipts are subject to the tax, to the burden of proof and to the *prima facie* showing made by a certificate of delinquency.

The evidence showed that appellant sold large quantities of ice to said packers during the period in question; that said ice was sold to the packers in 300-pound blocks at $3 per ton; that it was used by said packers in icing lettuce for shipment in carload lots; that each carload contained approximately 300 crates of lettuce; that said ice was crushed by the packers and the lettuce was iced by putting some of the crushed ice in each crate and by blowing a large quantity of crushed ice into the top of each car after the crates had been loaded; that approximately 10 tons of ice was used in so preparing each car for shipment; that in the nature of things, some of the ice was lost by melting during the crushing and preparation for shipment and some of the ice was lost by melting during shipment.

The evidence further showed that about 64 per cent of the carload lots shipped by the packers were sold by them for cash, f. o. b. Salinas; that there was a custom in the trade of making a separate charge to the purchasers on such f. o. b. shipments for the icing at the rate of $30 per car; that the customary form of invoicing was "top ice—$30"; that carload lot shipments, representing the remaining 36 per cent of the total, were principally "consignment sales", "delivered sales" and "wire rolls"; that such "sales"

were not f. o. b. sales and in some instances no sales of such shipments were made due to the demoralized condition of the market and in other instances, sales of such shipments, in whole or in part, were made at sacrifice prices. In none of these instances, was any separate charge made for icing but the lettuce was sold, if sold at all, for whatever price could be obtained at the point of destination. Not all of the packers kept separate "ice accounts" but, accepting appellant's figures and calculations, it appears that the packers recouped only a part, but not more than an average of 63 per cent, of the cost of the ice by making the above-mentioned charges for icing.

Certain further facts should be mentioned. The evidence showed that appellant was in the business of producing ice and of selling the same at both wholesale and retail. It made a return on those sales which were admittedly retail sales and paid the tax thereon. It made a return on the sales here involved but claimed that they were not retail sales within the meaning of the act and it therefore paid no tax thereon. Each of the packers had furnished to appellant the certificate prescribed in section 17 of the act stating that the ice was purchased "for resale in the form of tangible personal property".

It is apparently conceded that it is immaterial that appellant may have been engaged in both the wholesale and the retail business and that appellant may have sold ice to the packers in large quantities at a price lower than the price generally charged on ordinary retail sales. These considerations become immaterial for the reason that the act itself contains a definition of what constitutes a "retail sale" within the meaning of the act. (*National Ice & Cold Storage Co.* v. *Pacific Fruit Express Co.,* 11 Cal. (2d) 283 [79 Pac. (2d) 380]; *Wiseman* v. *Arkansas Wholesale Grocers' Assn.,* 192 Ark. 313 [90 S. W. (2d) 987].)

Appellant claims first, that the purpose of a sale is the criterion of taxability under the act and second, that the uncontradicted evidence in the present case showed that the purpose of the sales involved was "for resale in the form of tangible personal property" and that the trial court therefore erred in finding to the contrary. We may assume, without deciding, that appellant is correct in stating that purpose is the criterion notwithstanding the fact that the property,

which is the subject of the sale, or some of such property, may not be in fact resold. We cannot agree, however, that the trial court erred in making findings adverse to appellant with respect to the purpose of said sales.

In a memorandum opinion, the views of the learned trial court judge were expressed in part as follows: "The defendant in its brief states that the criterion of taxability is purpose. I think the record clearly shows that the purpose for which this ice was bought by the packers and shippers was for the purpose of preserving and protecting lettuce in order that they might sell it outside of the Salinas Valley. They did not buy this ice for the purpose of selling ice, but they bought it for the purpose of preserving lettuce, in order that it might be sold in foreign markets at a profit. . . . None of the ice involved in this proceeding was sold for the purpose of resale in the form of tangible personal property within the meaning of that definition. . . . In selling a carload of lettuce packed in ice in the manner testified to at the trial these shippers are merely selling a refrigeration service necessary and incident to the conduct of their business. They do not sell ice any more than they sell lettuce crates."

We are in accord with the reasoning set forth and the conclusion reached in said memorandum opinion. While the case of *National Ice & Cold Storage Co.* v. *Pacific Fruit Express Co., supra,* is distinguishable, the evidence here showed that the real purpose for which the ice was purchased by the packers was to preserve and protect lettuce during the shipment of said lettuce to their customers. In other words, it was purchased for the purpose of furnishing a refrigeration service as a necessary incident of the packers business of selling lettuce. The cases cited by appellant do not appear to be controlling but the situation presented is somewhat analogous to cases involving sales to merchants of containers, wrapping materials and the like to be used for the purpose of protecting their merchandise during shipment or delivery to their customers. Such sales have been held to be taxable under similar statutes even though the cost of such materials might be reflected in the prices charged by the merchant for his own merchandise. (*Wiseman* v. *Arkansas Wholesale Grocers' Assn., supra; Warren* v. *Fink,* 146 Kan. 716 [72 Pac. (2d) 968].) There is also a similarity

to the sales of non-rust oil to metal working factories to be used for the purpose of protecting their metal products during shipment. (See Wayne Chemical Company products listed in *Boyer-Campbell Co.* v. *Fry,* 271 Mich. 282 [260 N. W. 165, 97 A. L. R. 827].) Appellant points to the fact that none of the purchasers in the cited cases made a separate charge to its own customers for such materials in addition to the price charged for its own merchandise. This is true but it may be recalled that the packers made a separate charge for icing only in certain cases. But even assuming that a separate bookkeeping entry had been made for icing in all cases, we are of the opinion that the principle remains the same and that the sales of ice by appellant to the packers for the purpose of preserving and protecting their product during shipment would still be taxable. Neither a trade custom nor a bookkeeping entry with respect to the charge made by the packers for such icing could change the real purpose of the sale by appellant to said packers or affect the taxability thereof.

In this discussion, we have referred to charges made by the packers to their customers as charges for "icing" and have not referred to them as charges for "sales of ice" as does appellant. The charges made in certain bookkeeping entries made these transactions appear as sales of ice, but we believe that the trial court correctly determined that the form of the bookkeeping entries was not conclusive and that such charges were in reality charges made for the furnishing of refrigeration service. We are therefore of the opinion that the trial court's findings were amply sustained by the evidence.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 26, 1939.