[L. A. No. 18990. In Bank. Feb. 9, 1945.]

THE COCA-COLA COMPANY (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA, Respondent.

Earle M. Daniels, Julius V. Patrosso and Hallam Mathews for Appellant.

Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, and John L. Nourse, Deputy Attorney General, for Respondent.

EDMONDS, J.—The Coca-Cola Company, under protest, paid the amount of a sales tax which had been levied against it on account of the purchase of wooden barrels and kegs in which it sold its products. This action followed, and the question presented for decision upon the company's appeal from an adverse judgment concerns the application of the Retail Sales Act of 1933 (Stats. 1933, ch. 1020; Deering's Gen. Laws, 1937, 1941 Supp., Act 8493; now Sales and Use Tax Law, Rev. & Tax. Code, div. II, pt. 1) to such transfers.

By the terms of the statute as in effect at the time of the

transactions in question, a tax is imposed upon retailers "for the privilege of selling tangible personal property" (§ 3). "Sale" is defined as "any transfer of title or possession, or both ... for a consideration" (§ 2, subsec. b); "retail sale" or "sale at retail" as "a sale to a consumer or to any person for any purpose other than for resale in the regular course of business" (§ 2, subsec. c), and "retailer" as "every person engaged in the business of making sales at retail. . . ." (§ 2, subsec. c.) The burden of proving that a sale of tangible personal property is not taxable is upon the vendor, unless he takes from the vendee a certificate that the property is purchased for resale. (§ 17.) "If a purchaser who gives such a certificate makes any use of such property other than retention, demonstration, or display while holding it for sale in the regular course of business, such use shall be deemed a retail sale by such purchaser. . . ."

At the time of the sales upon which the state has made assessments, the appellant was engaged in the business of manufacturing and selling at wholesale the syrup which is the base of the drink sold under the trademark of "Coca-Cola." In containers of various types, the syrup was sold to jobbers who in turn sold it in the original packages to retailers for use in making and dispensing the drink from soda fountains or less elaborate equipment. The Coca-Cola Company purchased the barrels and kegs from manufacturers in California. There was no reservation of title to the containers upon the sale of syrup to a jobber, nor was any charge made for the container.

The state bases its assessments upon the amount of the sales made by the manufacturer of the barrels or kegs, but charges Coca-Cola Company with liability for the tax because the appellant gave certificates of resale in the form prescribed by the statute. Under these circumstances, the parties agree, the responsibility for the payment of any tax legally collectible may be placed upon the Coca-Cola Company.

The theory of the levy against the appellant is that by its use of the articles they became "self consumed merchandise" subject to the sales tax. It is conceded that the amount of the assessment is properly computed, that the appellant paid the tax and, after proper and timely application for a refund thereof, its claim for refund was denied.

Although there is considerable conflict in the authorities concerning the time when the sale of a container at retail

occurs, in 1936 the Board of Equalization, acting in accordance with the authority vested in it by section 27 of the Retail Sales Act, *supra,* adopted a rule which declared the policy it would follow in administering the California statute. That rule, in varying form, was in force at the time of the transactions which are the basis of the appellant's claim for refund. From January 22, 1936, to August 29, 1939, insofar as is pertinent, it read as follows: ''Gross receipts from sales of containers such as fruit boxes, burlap sacks, bottles, cans and packing cases to growers, packers, bottlers and others who place the contents in the containers are not taxable if the containers are sold with the contents. . . . If, however, the containers are not sold with the contents, as is generally the case with . . . containers upon which deposits are taken to insure their return, the gross receipts from the sale of containers are taxable.'' At all times subsequent to August 29, 1939, the wording, insofar as is material to the present case, was: ''The term 'containers' as used herein means the articles and devices in which tangible personal property is placed for shipment and delivery. . . . The term 'returnable containers' as used herein means those containers which are returned by the buyers of the contents and re-used by the packers, bottlers or sellers of the commodities contained therein. A container is classed as a returnable container if title to the container is retained by the packer, bottler, or seller of the contents or if the packer, bottler, or seller of the contents charges a deposit on the container. . . . The term 'nonreturnable containers' as used herein means those containers which are sold with the contents and are not returned by the buyers of the contents for re-use by the packers, bottlers, or sellers of the contents. . . . Gross receipts from sales of nonreturnable containers to persons who place commodities to be sold in such containers are sales for resale and, accordingly, are not taxable.'' (Rule 10.)

■ Although not necessarily controlling, as where made without the authority of or repugnant to the provisions of a statute, the contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. (*Shealor* v. *City of Lodi,* 23 Cal. 2d 647 [145 P. 2d 574]; *People* v. *Southern Pacific Co.,* 209 Cal. 578 [290 P. 25]; *Riley* v. *Thompson,* 193 Cal. 773 [227 P.

772] ; *Riley* v. *Forbes,* 193 Cal. 740 [227 P. 768].) ▮ But the Board of Equalization now takes the position that its adoption of rule 10, construing the sales tax law to exempt the sale of nonreturnable containers to original users, was erroneous and contrary to the terms of the act. In any event, the board adds, the particular sales now in controversy are not within the meaning of the rule, for it does not appear that the barrels or kegs containing syrup were nonreturnable. However, the rule does not purport to exempt the sale of nonreturnable containers from taxation; it merely interprets the statute by explaining that the sale of "nonreturnable containers to persons who place commodities to be sold in such containers" is not a retail sale and is therefore not taxable. There is no provision in the statute requiring a tax to be paid upon such transactions and the sales of barrels and kegs by the cooperage companies to the Coca-Cola Company clearly fall within the board's rule.

The only evidence concerning the appellant's business practices in regard to containers is the testimony of its auditor. He stated that the company reserved no title to the containers and made no separate charge for them. The contracts and invoices of the company confirm this fact. There is nothing to show that Coca-Cola Company ever required a deposit upon its containers or gave a credit for their return, or, indeed, that the kegs and barrels were in fact returned or returnable. Moreover, according to the record, the action was tried upon the theory that the containers were nonreturnable.

▮ The Legislature has frequently amended the Retail Sales Tax Act, including section 2, which, among other things, defines "retail sale" and "sale at retail." (Stats. 1933, p. 2599; Stats. 1937, p. 2223; Stats. 1939, p. 2170.) It may be presumed that these amendments were made with full knowledge of the construction which had been placed upon the statute by the Board of Equalization, yet there was no modification of the legislation which would require a contrary interpretation. This is a factor that may be considered in determining the meaning of the terms intended by the Legislature. (*Federal C. Com.* v. *Columbia Broadcasting System,* 311 U.S. 132 [61 S.Ct. 152, 85 L.Ed. 87] ; *Helvering* v. *Hallock,* 309 U.S. 106 [60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368] ; *Helvering* v. *R. J. Reynolds Tobacco Co.,* 306 U.S. 110 [59 S.Ct. 423, 83 L.Ed. 536] ; *Old Colony R. Co.* v. *Commissioner of Int.*

*Rev.*, 284 U.S. 552 [52 S.Ct. 211, 76 L.Ed. 484]; *People* v. *Southern Pac. Co.*, 209 Cal. 578 [290 P. 25]; *Colonial Mut. Comp. Ins. Co., Ltd.* v. *Mitchell*, 140 Cal.App. 651 [36 P.2d 127]; *Godward* v. *Board of Trustees*, 94 Cal.App. 160 [270 P. 725].) And particularly because of the amendment made at the last session of the Legislature, the board's construction of the act should be decisive of the present litigation.

Unquestionably because of controversies such as the one now before the court, in 1943 the Legislature amended the statute to expressly exempt nonreturnable containers. The new provision, section 6364 of the Revenue and Taxation Code, reads as follows: "There are exempted from the taxes imposed by this part, the gross receipts from sales of . . . (a) Nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container. . . . As used herein the term 'returnable containers' means containers of a kind customarily returned by the buyer of the contents for reuse. All other containers are 'nonreturnable containers.' " This change may be considered in determining the scope of the tax statute at the time of the transactions here involved for in view of an amendment to the Retail Sales Tax Act at a time when certain groups were resisting collection of taxes assessed against them, the court could infer a legislative intent to clarify rather than change the existing law. (*Standard Oil Co.* v. *Johnson*, 24 Cal.2d 40 [147 P.2d 577]; *Union League Club* v. *Johnson*, 18 Cal.2d 275 [115 P.2d 425].)

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Schauer, J., concurred.

CARTER, J.—I dissent. In my opinion the transaction was clearly taxable under the statute for the following reasons: (1) the rule of the Board of Equalization exempting the transaction from the tax was in excess of its powers. (2) The record fails to show that the barrels were not returnable to appellant, hence, under both the rule of the board, assuming it is lawful, and the 1943 amendment to the statute, the transaction was taxable. (3) The 1943 amendment was a change in the law, not a clarification.

The transaction involved is simple. The manufacturers of the barrels in California sold them to appellant, Coca-Cola

Company. That company used them as containers for its product and in turn sold the product. Ordinarily the tax would have been payable by the manufacturer of the barrels for the sale by it to appellant was for other than resale. The barrels were sold to appellant for use by it. However, the manufacturer received from appellant a resale certificate, that is, a written statement that appellant was buying the barrels for resale. The effect of that certificate is that "If a *purchaser* who gives such a certificate makes *any use* of such property other than retention, demonstration, or display while *holding it for sale* in the regular course of business, *such use shall be deemed a retail sale by such purchaser* as of the time such property is first used by him and the cost of such property to him shall be deemed the gross receipts from such retail sale. If the sole use of such property other than retention, demonstration or display in the regular course of business is the rental of the property while holding it for sale, the purchaser may elect to include in his gross receipts the amount of the rental charged rather than the cost of the property to him." (Italics added.) (Retail Sales Act of 1933, Stats. 1933, p. 2599, as amended, § 17.) Hence, the tax is payable by appellant if it made *any* use of the barrels other than merely *holding* them for resale. That provision embraces the same thought expressed in the definition of a sale at retail, namely, a sale "to *any* person for *any* purpose other than resale." (Retail Sales Act of 1933, § 2(c).) Certainly a *use* of the article by the purchaser is a purpose other than for resale.

Turning to the record in the instant case, and remembering that the trial court found that there was such use, it appears that appellant's witness testified that the barrels were used by appellant in selling and *packing* its product; that the product was placed in the containers; that the product could not be sold other than in containers; that "Q. It is necessary, in order *to have merchandise,* the Coca-Cola syrup, that you *have a container?* A. That is right. Q. And it is for *that purpose that you use these barrels* and cans and kegs? A. Yes, sir." Appellant maintains control over the containers inasmuch as the jobbers to whom it sells the product are *"required* to sell it in the original package."

The certificate of resale given by the jobbers to appellant, in describing the property sold to the jobber, mentions the syrup and other items but not the barrels or other containers.

Although appellant's witness did testify that appellant did not reserve title to the barrels, there is no other evidence indicating that the barrels were not returnable to it. The *burden of proof rested upon the appellant.* The trial court could have disbelieved the testimony of the witness and the record before it would have been shorn of any evidence that the barrels were not returnable. If anything, the inference would be that they were returnable, inasmuch as they have considerable value, are primarily usable by appellant, being made for its purposes, and the jobbers could not alter them. It cannot be said therefore that, as a matter of law, the barrels were not used by appellant and were not returnable within the meaning of the statute. But that is precisely what the opinion prepared by Mr. Justice Edmonds holds. In *American Distilling Co.* v. *State Bd. of Equalization,* 55 Cal.App.2d 799 [131 P.2d 609], the court held that a rule of the board exempting certain transactions from the Retail Sales Tax Act of 1933, was void because no such exemption appeared in the exempting portions of the act.

However, even if we assume that the barrels were not returnable, still, under the authorities, they would be taxable to appellant for they were *used* by it. In *People* v. *Puritan Ice Co.,* 24 Cal.2d 645 [151 P.2d 1], this court held the sale of ice to the packer of vegetables who in turn sold his packed product including the ice to buyers in the east was taxable to the seller of the ice to the packer although the buyer of the vegetables from the packer was separately billed for the ice. This court said:

" ' "They (the packers) *did not buy this ice for the purpose of selling ice, but they bought it for the purpose of preserving lettuce, in order that it might be sold in foreign markets at a profit.* . . . None of the ice involved in this proceeding was sold for the purpose of resale in the form of tangible personal property within the meaning of that definition. . . . They do not sell ice any more than they sell lettuce crates." ' . . . Whether we take the view of one of respondent's witnesses that the ice is used to make the vegetable more attractive and salable or that the ice is purchased solely for preserving the vegetables, the result is the same. The essence of the matter is that the purchasers of the ice are acquiring it for purposes other than resale. They are not engaged in the ice selling business. They are selling vegetables and the use

of the ice or purported sale thereof to the purchasers of the vegetables is merely an incident of that activity. . . . Realistically, the purchasers of the vegetables are not concerned with acquiring ice as such.'' (24 Cal.2d 645, 649, 650.) Likewise, in the case at bar the appellant is not engaged in the business of selling barrels. On the contrary it is selling syrup and as an incident thereto and as a necessary part of its business it is *using* the barrels which it purchases. Manifestly, the meaning of use is not limited to or the same as consumption. In *Kirk* v. *Johnson,* 37 Cal.App.2d 224 [99 P.2d 279], the sale was of dairy cows, which the buyer used as milk cows and then sold them for meat. It was held taxable, the court stating:

''Under the circumstances of this case the dairy cattle were not bought 'for resale.' It is apparent that the chief purpose for which they were purchased was not for resale, but *they were to be used for the benefit of the owners in conducting their dairy businesses* as long as they were profitable for that purpose.'' (Italics added.) In the instant case appellant's own witness testified, as above quoted, that *it was necessary for appellant to have the barrels to conduct its business.* In *Owens Illinois Pacific Coast Co.* v. *State Board of Equalization,* the Superior Court for Sacramento County in holding the sale of bottles to a manufacturer and bottler of beer taxable, stated:

''In the instant case the bottles were sold to the breweries for the purpose of serving as containers for the beer until the beer was sold and for the further purpose of enabling the breweries to market the beer. None of the breweries to which the bottles were sold by plaintiff are engaged in selling empty bottles. If it were not for the beer which they manufacture the bottles would be of no utility to them. The conclusion is proper that these bottles were purchased by the breweries to be put by them in their business to a substantial use. The fact that their purpose is to pass title to the containers when the beer is sold and to make a charge therefor does not under the reasoning of the California cases mentioned alter the nature of the original sale of the bottles.'' The case of *People* v. *Monterey County Ice & Dev. Co.,* 29 Cal.App.2d 421 [84 P.2d 1069], involved the same factual situation as *People* v. *Puritan Ice Co., supra.* There can therefore be no escape from the proposition that the transaction here involved was undoubtedly taxable under the statute.

The first proposition heretofore stated, that is, that if the rule of the board exempts this transaction, it exceeded its powers, necessarily follows. Being clearly taxable under the statute it could not be exempted. When a rule of an administrative officer exempts a transaction from a taxing statute it should be closely scrutinized to ascertain whether it is within the scope of his power. *An exemption from a tax statute is strictly construed against the one asserting the exemption.* (*Miller* v. *McColgan*, 17 Cal.2d 432 [110 P.2d 419, 134 A.L.R. 1424] ; *San Francisco* v. *San Mateo County*, 17 Cal.2d 814 [112 P.2d 595] ; 51 Am.Jur., Taxation, §§ 524-525.) It follows that in determining the scope of power of the administrative official to make rules exempting property from a taxing statute the question of the validity of the rule must be answered by a strict construction against the one claiming the exemption. (See 51 Am.Jur:, Taxation, § 530.)

On the second proposition I have pointed out that the evidence, if of any value on the subject, indicates that the *barrels were returnable.* Thus, under the rule of the board, by its very wording or without it, the transaction would be taxable. If the barrels are to be returned then no one can doubt that appellant is *using* them, and that it does not sell them at all. There is no resale of the barrels. They would be merely loaned to the jobber and retail seller of the Coca-Cola. But assuming the evidence indicates that the barrels were nonreturnable, the burden of proving that issue was upon appellant. (See *McDougald* v. *Boyd,* 172 Cal. 753 [159 P. 168] ; 51 Am.Jur., Taxation, § 527.) The trial court may have disbelieved appellant's witness who stated that appellant did not reserve title to the barrels. In any event the mere failure to reserve title does not exclude the probability that the barrels are returnable.

The third proposition that the 1943 amendment to the statute (Stats. 1943, ch. 822) changed the law rather than merely clarified it, is clear. The amendment reads:

"There are *exempted* from the taxes imposed by this part, the gross receipts from sales of and the storage, use, or other consumption in this State of:

"(a) Nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container.

"(b) Containers when sold with the contents if the sales price of the contents is not required to be included in the

measure of the taxes imposed by this part. (c) Returnable containers when sold with the contents in connection with a retail sale of the contents or when resold for refilling.

"As used herein the term 'returnable containers' means containers of a kind customarily returned by the buyer of the contents for reuse. All other containers are 'nonreturnable containers.' " (Italics added.) When the Legislature passed that amendment it clearly believed that such containers were not exempt under the existing law. It had more in mind than clarification. That statement is true for the following reasons: (1) The amendment refers to sales of the named items as being *exempted* from the tax. It was placed in the chapter and article of the Revenue & Taxation Code dealing with *exemptions* (Rev. & Tax. Code, § 6364). It was not an amendment of the provisions dealing with the definition of a sale at retail, or of that imposing a tax. If the transaction was not taxable under the act there would be nothing to exempt it from. Hence, the Legislature must have thought the sale was taxable and needed a specific exemption to enable it to escape. (2) Unlike the situation in *Standard Oil Co.* v. *Johnson,* 24 Cal.2d 40 [147 P.2d 577], and *Union League Club* v. *Johnson,* 18 Cal.2d 275 [115 P.2d 425], here there was no controversy or doubt about the meaning of the statute. It definitely included the sale of containers. The Legislature presumably was aware of *Kirk* v. *Johnson,* 37 Cal.App.2d 224 [99 P.2d 279]; and *People* v. *Monterey County Ice & Dev. Co.,* 29 Cal.App.2d 421 [84 P.2d 1069], heretofore discussed, which, because of the reasoning and the existence of analogous facts pointed unerringly to the conclusion that the instant transaction was taxable. Rather than clarifying the statute the Legislature was seeking to nullify the effect of those decisions where containers were involved. This plainly indicates that the intent was not clarification as contemplated in *Standard Oil Co.* v. *Johnson,* 24 Cal.2d 40 [147 P.2d 577]; *Union League Club* v. *Johnson,* 18 Cal.2d 275 [115 P.2d 425], but was to *change* the law as stated in *People* v. *Puritan Ice Co.,* 24 Cal.2d 645, at page 652 [151 P.2d 1]:

"Finally, it is of some significance that in 1943, *after the decision in the Monterey case holding that ice sold to packers of vegetables is not a sale for retail,* the Legislature passed a bill amending the Retail Sales Tax Act, by adding section 6359.5 thereto reading: 'As incidental to the *exemption* provided for in Section 6359, there are *exempted* from the taxes

imposed by this part, the gross receipts from the sale of and the storage, use, or other consumption in this State of containers, ice, packing materials and labels used or employed in packing, shipping or transporting food products.' Section 6359 referred to, exempts food products from the sales tax. Although that bill was vetoed by the Governor, still *its passage by the Legislature indicates an impression on its part that it was necessary to specifically exempt ice sold for such purpose. Otherwise, it would be subject to the tax.* It is quite natural that the Legislature would have that thought in view of the decision in the Monterey case. True, there may have been a dispute with respect to whether the food products exemption embraced ice for preservation of the food, a factor not considered in the Monterey case, and hence, there might be some reason for applying the rule that the legislation was intended for clarification and not to change the law (see *Standard Oil Co.* v. *Johnson,* 24 Cal.2d 40 [147 P.2d 577]; *Union League Club* v. *Johnson,* 18 Cal.2d 275 [115 P.2d 425]), but here the basic issue of whether such sales were taxable had at least partially settled any dispute.'' (Italics added.)

(3) It is asserted in the opinion prepared by Mr. Justice Edmonds that the Legislature failed to amend the statute after the rule was adopted by the Board of Equalization and that therefore a legislative approval of the rule is indicated. That is completely refuted by the amendment in 1943. If the Legislature thought the rule satisfactory and that it exempted the transaction here involved, why did it amend the law in 1943? If the rule already accomplished the result achieved by that amendment the latter would be an idle gesture. It is not to be supposed that the Legislature indulges in that practice.

In my opinion the judgment should be affirmed.

Respondent's petition for a rehearing was denied March 1, 1945. Carter, J., and Spence, J., voted for a rehearing.