79 Cal.App.3d 682 (1978)
145 Cal. Rptr. 146
In re Determination of Rights to WATERS OF SOQUEL CREEK STREAM SYSTEM.
CITY OF CAPITOLA, Petitioner and Respondent,
v.
CHY COMPANY et al., Claimants and Respondents;
STATE WATER RESOURCES CONTROL BOARD, Appellant.
Docket No. 41457.
Court of Appeals of California, First District, Division Three.
April 11, 1978.
*683 COUNSEL
Evelle J. Younger, Attorney General, R.H. Connett, Assistant Attorney General, Roderick Walston and Richard C. Jacobs, Deputy Attorneys General, for Appellant.
No appearance for Petitioner and Respondent.
Downey, Brand, Seymour & Rohwer and James M. Day, Jr., for Claimants and Respondents.
OPINION
ABBE, J.[*]
Pursuant to California Water Code section 2525, the City of Capitola, located in Santa Cruz County, California, filed a petition with the State Water Resources Control Board (hereinafter referred to as the Board) requesting a determination of the rights of various claimants to the waters of the Soquel Creek Stream System. The Board found that the public interest and necessity would be served by a determination of the *684 water rights involved, made an order granting the petition and made proper arrangements to proceed. As required by the Water Code (all references hereinafter are to the Water Code), the Board investigated the Soquel Stream System and in July 1973 published the data, maps and information gathered. Pursuant to section 2700, after completing the preliminary procedures, it made an order of determination which, together with the evidence considered by the Board, was filed with the Clerk of the Superior Court of Santa Cruz County.
The Board obtained an order from the Santa Cruz County Superior Court setting a time for hearing the order of determination. Exceptions to the order were filed by respondents J.M. and Josephine Seropan and the Chy Company. The superior court hearing was held on November 20, 1975.
The Board's order of determination concluded that respondent Chy Company was entitled to the following allocations:
1. 1,000 gallons per day (gpd) in first priority for existing domestic uses;
2. 1,880 gpd in fourth priority for potential irrigation of riparian lands;
3. 0.36 cubic feet per second for existing riparian industrial uses in the second priority;
4. 4,000 gpd in the second priority for potential industrial or domestic uses; and
5. 400,000 gpd in the fourth priority for potential irrigation of riparian lands.
The order of determination further concluded that the respondent Seropans were entitled to the following allocations:
1. 500 gpd in the first priority for existing domestic uses;
2. 2,900 gpd in the second priority for existing irrigation purposes;
3. 500 gpd in the second priority for potential domestic use; and
*685 4. 2,900 gpd in the fourth priority for potential irrigation of riparian lands.
The respondents excepted on the grounds (1) that the Board lacks the power to quantify riparian rights not now being used; (2) that the Board acted improperly in placing unexercised riparian rights in the fourth priority class, below appropriative rights; and (3) that, for the same reason, unexercised or dormant riparian rights must be placed on the same priority as exercised or active riparian rights.
The Board's order of determination placing respondents' dormant riparian rights in the fourth priority class would prohibit their right to use water in the future for beneficial and reasonable uses to which their land may be made adaptable until the allocations previously made to the first three priority classes had been filled. Additionally, riparian owners are limited to specific amounts of water for future use by the Board's order, even though more water might be used beneficially and reasonably and to which riparian land might be made adaptable. If respondents' exceptions were sustained, however, the riparian claimants who are now exercising their rights, and those who have not yet done so, would be able in the future to divert a portion of the available water needed to satisfy reasonable and beneficial uses then commenced on their riparian lands, so long as such uses would be correlative to similar uses of the other than existing riparian claimants. The resolution by the court of the exceptions filed by respondents obviously will have a significant effect on the use of water from the Soquel Creek Stream System.
Judge Charles Franich sustained the respondents' exceptions in all respects. He concluded that the Board lacked the power to quantify unexercised riparian rights, that the Board erred in assigning unexercised riparian rights a priority different from riparian rights now being exercised, and that both exercised and unexercised riparian rights must receive a priority higher than appropriative rights.
The trial court remanded the matter to the Board for the preparation of a revised decree consistent with the court's decision. The Board prepared such a revised order and the court entered the decree based upon the revised order. The Board appealed.
Article X, section 2 (formerly art. XIV, § 3) of the California Constitution reads: "It is hereby declared that because of the conditions prevailing in this State the general welfare requires that the water *686 resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such waters is to be exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare. The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water. Riparian rights in a stream or water course attach to, but to no more than so much of the flow thereof as may be required or used consistently with this section, for the purposes for which such lands are, or may be made adaptable, in view of such reasonable and beneficial uses; provided, however, that nothing herein contained shall be construed as depriving any riparian owner of the reasonable use of water of the stream to which the owner's land is riparian under reasonable methods of diversion and use, or as depriving any appropriator of water to which the appropriator is lawfully entitled. This section shall be self-executing, and the Legislature may also enact laws in the furtherance of the policy in this section contained."
(1) This section, added to the California Constitution by amendment in 1928, seems to grant riparian owners all the water which they may reasonably and beneficially use for the purposes for which their lands are, or may be made adaptable. The Supreme Court has so held. In Tulare Dist. v. Lindsay-Strathmore Dist. (1935) 3 Cal.2d 489, 525 [45 P.2d 972], the court stated that this constitutional provision "not only protects the actual reasonable beneficial uses of the riparian but also the prospective reasonable beneficial uses of the riparian. As to such future or prospective reasonable beneficial uses, it is quite obvious that the quantity of water so required for such uses cannot be fixed in amount until the need for such use arises. Therefore, as to such uses, the trial court, in its findings and judgment, should declare such prospective uses paramount to any right of the appropriator. By such declaratory judgment, the rights of the riparian will be fully protected against the appropriative use ripening into a right by prescription, but, until the riparian needs the water, the appropriator may use it, thus, at all times, putting all of the available water to beneficial uses. The trial court might well, by appropriate provisions in its judgment, retain jurisdiction over the cause, so that when a riparian claims the need for water, the right to which was awarded him under such a declaratory decree, the trial court *687 may determine whether the proposed new use, under all the circumstances, is a reasonable beneficial use and, if so, the quantity required for such use."
In addition, the court in Meridian, Ltd. v. San Francisco (1939) 13 Cal.2d 424, 445 [90 P.2d 537], in discussing the part of this section which provides that riparian rights attach only to so much of the flow of a stream as may be required or used consistently with the section, stated: "This provision clearly means that when the law has guaranteed to the riparian owner the use of the waters of the stream to the full extent to which he may put the same for all present and prospective useful and beneficial purposes, ... he has received the full measure of benefit and protection to which he is entitled, and can claim no more." The use of the phrase "prospective useful and beneficial purposes" certainly makes Meridian consistent with the Tulare decision in which the court stated, "The new doctrine not only protects the actual reasonable beneficial uses of the riparian but also the prospective reasonable beneficial uses of the riparian." (Tulare, supra, at p. 525.)
Since 1928, California water law has recognized that, as against an appropriator, a riparian owner "is entitled to all of the water of the stream, both in the quantity and quality of its natural state, which he is able to put to a reasonable beneficial use, and to be protected in that right by the injunctive processes of the court." (Meridian, Ltd. v. San Francisco, supra, 13 Cal.2d 424, 447.)
Furthermore, the courts have held that the rights of a riparian owner are not destroyed or impaired by the fact that the riparian owner has not yet used the water upon his riparian lands. (Parker v. Swett (1922) 188 Cal. 474, 480 [205 P. 1065]; Lux v. Haggin (1886) 69 Cal. 255, 390-391 [4 P. 919]; Half Moon Bay Land Co. v. Cowell (1916) 173 Cal. 543, 551 [160 P. 675]; Meridian, Ltd. v. San Francisco, supra, 13 Cal.2d 424, 445.)
In Mt. Shasta Power Corp. v. McArthur (1930) 109 Cal. App. 171 [292 P. 549], the court ruled that riparian rights, at least as among riparian owners, are not lost by a failure to use them. In Tulare, supra, the court ruled that section 11 of the Water Commission Act, which attempted to declare that 10 years' nonuse of riparian rights constituted a conclusive presumption of abandonment, was unconstitutional.
The conclusion this court must draw from Tulare and Meridian is that the Constitution protects present and future riparian rights from infringement, *688 to the extent that such rights are exercised in a manner which is both reasonable and beneficial and to which riparian land may be made adaptable.
Section 2769 requires that the court decree must "declare as to the water right adjudged to each party, the priority, amount, season of use, purpose of use, point of diversion, and place of use of the water; and as to water used for irrigation, the decree shall also declare the specific tracts of land to which it is appurtenant, together with such other factors as may be necessary to define the right."
When entered, the decree "is conclusive as to the rights of all existing claimants upon the stream system lawfully embraced in the determination." (§ 2773.)
Section 2774 provides as follows: "When a decree has been entered, any claimant who has failed to appear and submit proof of his claim as provided in this chapter shall be barred and estopped from subsequently asserting any rights theretofore acquired upon the stream system embraced in the proceedings, and shall be held to have forfeited all rights to water theretofore claimed by him on the stream system, other than as provided in the decree, unless entitled to relief under the laws of this State."
The Board construes these sections as authority to make final and conclusive orders specifying quantities and assigning priorities of future rights, even though such uses may be reasonable and beneficial and to which their land may be made adaptable, to amounts and in priorities presently set. However, the Supreme Court in Tulare held otherwise.
Courts must construe a statute in such a way as to uphold its constitutionality, if possible. (Palermo v. Stockton Theatres, Inc. (1948) 32 Cal.2d 53, 60 [195 P.2d 1].) It seems rather impossible to reconcile the constitutional provision and the Supreme Court's ruling in Tulare with the construction placed upon the statutory adjudication procedure by the Board in relation to dormant riparian rights and legislation regarding the conclusiveness of judicial decrees made in such proceedings.
The policy of the Board of quantifying prospective riparian uses suffers the same constitutional infirmities as did the statute considered in Tulare extinguishing prospective riparian rights after 10 years of nonuse.
*689 This court is aware of the well established practice of the Board and its predecessor in administering statutory adjudication proceedings and we do hereby take judicial notice of the two thick volumes of administrative decisions which have been lodged with the court. These decisions show that since 1935 appellant has consistently interpreted section 2500 et seq. to require all riparian rights be fixed in its orders of determination. This is significant because of the longstanding rule that the "contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (Coca-Cola Co. v. State Bd. of Equalization (1945) 25 Cal.2d 918, 921 [156 P.2d 1].) However, adoption by the court of the Board's construction of the statutory procedure would require holding such procedures unconstitutional and, as we have pointed out, this should be avoided if possible.
We are cognizant of the fact that we are dealing with a statute designed to maximize the beneficial use of water in areas of water shortage and designed to afford finality and certainty to competing claims to the use of the existing water supply. It would be highly desirable if the rights of all claimants would be determined at the same time and permanently. However, the possible future use of a riparian right cannot be anticipated, and obviously, to that extent, uncertainty exists as to what a court in the future may find to be reasonable and beneficial. Since the state has chosen to give constitutional protection to unexercised riparian rights and the Supreme Court has construed this constitutional provision in the Meridian and Tulare cases, this court feels compelled to rule against the position asserted by the Board.
We conclude that the trial court acted properly in ordering modification of the order of determination to place unexercised riparian rights on the same priority level as exercised riparian rights, and both in a priority higher than appropriative rights, and in refusing to quantify unexercised riparian rights.
Judgment affirmed.
Scott, Acting P.J., and Feinberg, J., concurred.
A petition for a rehearing was denied May 11, 1978, and appellant's petition for a hearing by the Supreme Court was denied June 9, 1978.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.