BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE NELL SOTO, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
Does a finance company have a statutory right of action against a surety upon an automobile dealer's bond when the dealer defaults on his or her loan from the finance company for the purchase of a vehicle at an auction?
 CONCLUSION
A finance company does not have a statutory right of action against a surety upon an automobile dealer's bond when the dealer defaults on his or her loan from the finance company for the purchase of a vehicle at an auction.
 ANALYSIS
The Department of Motor Vehicles ("Department") administers the issuance and renewal of motor vehicle dealer licenses (Veh. Code, §§ 11700-11909).[1] Subdivision (a) of section 11710 requires a dealer to submit a surety bond before obtaining a dealer license from the Department:
 "Before any dealer's or remanufacturer's license is issued or renewed by the department to any applicant therefor, the applicant shall procure and file with the department a bond executed by an admitted surety insurer, approved as to form by the Attorney General, and conditioned that the applicant shall not practice any fraud or make any fraudulent representation which will cause a monetary loss to a purchaser, seller, financing agency, or governmental agency."
The bond must be executed by an admitted surety insurer in the amount of $50,000 (§ 11710, subd. (b)), with certain exceptions not relevant here, or $10,000 for dealers who sell vehicles on a wholesale basis only and who sell fewer than 25 vehicles per year (§ 11710.1). All applicable statutory requirements are deemed incorporated into the bond. (Goggin v. Reliance InsuranceCompany (1962) 200 Cal.App.2d 361, 364-365; Krebs v. TravelersIndemnity Company (1961) 192 Cal.App. 2d 83, 86.)
The focus of our opinion is upon section 11711, subdivision (a), which states:
 "If any person (1) shall suffer any loss or damage by reason of any fraud practiced on him or fraudulent representation made to him by a licensed dealer or one of such dealer's salesmen acting for the dealer, in his behalf, or within the scope of the employment of such salesman and such person has possession of a written instrument furnished by the licensee, containing stipulated provisions and guarantees which the person believes have been violated by the licensee, or (2) if any person shall suffer any loss or damage by reason of the violation by such dealer or salesman of any of the provisions of Division 3 (commencing with Section 4000) of this code, or (3) if any person is not paid for a vehicle sold to and purchased by a licensee, then any such person shall have a right of action against such dealer, his salesman, and the surety upon the dealer's bond, in an amount not to exceed the value of the vehicle purchased from or sold to the dealer."[2]
We are asked whether a finance company may bring an action upon a dealer's bond under section 11711, subdivision (a)(3), which applies to any person who is not paid for a vehicle sold to and purchased by a dealer. We are given that the dealer has defaulted on the loan from the finance company for the purchase of a vehicle at an auction. We conclude that in these circumstances, the finance company would not have a right of action against the surety under the terms of section 11711, subdivision (a)(3).
Preliminarily, we note that we use the term "finance company" as referring to a business entity that loans operating capital to a dealer so that the dealer may purchase vehicles for inventory. Generally, title documents and collateral (the vehicles) remain in the possession of the borrowing dealer. This form of lending is typically referred to as a "flooring arrangement" or "floor plan lending." As explained by the Office of Comptroller of the Currency:
 "Floor plan, or wholesale, lending is a form of retail goods inventory financing in which each loan advance is made against a specific piece of collateral. As each piece of collateral is sold by the dealer, the loan advance against that piece of collateral is repaid. Items commonly subject to floor plan debt are automobiles, large home appliances, furniture, television and stereo equipment, boats, mobile homes, and other types of merchandise usually sold under a sales finance contract." (Off. of Comptroller of the Currency, Comptroller's Handbook, § 210 (May 1998), p. 1.)
With respect to an automobile dealer purchasing a vehicle at an auction, the entity operating the auction is not, strictly speaking, the seller of the vehicle. Rather, the operator acts as an intermediary between the person who is buying the vehicle and the seller. In the situation presented, the auction operator would pay the seller with funds provided by the automobile dealer (the dealer's own funds or funds obtained through an outside loan) or funds provided by a flooring line of credit connected with the auction.
The facts under review do not support a right of action by a finance company under the terms of section 11711, subdivision (a)(1) or subdivision (a)(2). No fraud or fraudulent representation is presented, and the matter does not pertain to the registration of vehicles or certificates of title. We are asked to analyze only the possible application of subdivision (a)(3) of section 11711 to the circumstances under consideration.
In analyzing the terms of section 11711, we may rely on well-settled principles of the statutory construction. "When interpreting a statute, our primary task is to determine the Legislature's intent. [Citation.]" (Freedom Newspapers, Inc. v.Orange County Employees Retirement System (1993) 6 Cal.4th 821,826.) "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (Dyna-Med, Inc. v. Fair Employment andHousing Com. (1987) 43 Cal.3d 1379, 1387.) "The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (Ibid.) "When the language is susceptible of more than one reasonable interpretation, . . . we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." (People v. Woodhead (1987) 43 Cal.3d 1002, 1008.)
Applying these rules of construction, we find first that a person who has a right of action under section 11711, subdivision (a)(3), is one who "is not paid for a vehicle." The vehicle is one that is "sold to and purchased by" a dealer. Here, the vehicle is being sold to the dealer through an auction. The vehicle is paid for by the dealer with proceeds of a loan from the finance company. When the dealer later pays the finance company, he or she is repaying the loan, not paying for the vehicle. (See Old Republic Surety Co. v. Bonham State Bank
(Tex.App.-Texarkana 2005) 172 S.W.2d 210, 216 ["The failure to repay a loan does not involve the sale of a motor vehicle and is, thus, not a transaction that is subject to liability under the bond"].)
Should the automobile dealer later default on the loan, he or she would be in breach of the loan agreement, and the finance company could proceed against him or her for repayment of the loan without regard to section 11711, subdivision (a)(3). "Floored items sold and not in process of payment represent breach of trust by the dealer, and the amounts owed represent unsecured credit." (Off. of Comptroller of the Currency, Comptroller's Handbook, § 210, supra, p. 3.) Under California law, if a vehicle is "inventory" (Cal. U. Com. Code, § 9102, subd. (a)(48)), the perfection of any security interest may be accomplished by the filing of a UCC-1 financing statement in the office of the Secretary of State. (§ 5907, Cal. U. Com. Code, § 9311, subds. (a)(2)(A), (d); see In re Babaeian TransportationCo. v. Chrysler Credit Corporation (Bankr. C.D.Cal. 1997)206 B.R. 536, 544-546.) Of course, an unperfected security interest is still binding as between the parties. However, that is a matter totally separate from the original sale of the vehicle; the vehicle itself was "paid for" when purchased at the auction by the dealer.
We recognize that a perfected security interest in an inventoried vehicle may be defeated by the dealer's sale of the vehicle to a buyer in the ordinary course of business. (Cal. U. Com. Code, §§ 9320, subd. (a), 1201) Nevertheless, nothing in section 11711, or the statutory scheme of which it is a part, suggests that subdivision (a)(3) is required to be a "back-up" remedy for a finance company whose customer has defaulted on a loan. As with other types of transactions, the finance company may take steps to protect itself from a loan default by, for example, requiring financial statements from the dealer, reviewing the dealer's credit history, requiring credit insurance, taking a security interest in other assets of the dealer, and taking collateral from the dealer's personal guarantors.
In any event, there is but one seller in the transaction under consideration, and that seller has been paid. Moreover, it is ordinarily the seller who is thought of as having been paid (or not paid) for a particular item that is sold to and purchased by another. Accordingly, under the plain language of subdivision (a)(3) of section 11711, a finance company, as the lender in the transaction, fails to qualify as a person who is not paid for a vehicle sold to and purchased by an automobile dealer at an auction.
Our interpretation of section 11711, subdivision (a)(3), has the effect of internally harmonizing its language by supplying an actor for the phrase "sold to." The only two actors specified in the provision are "any person [who] is not paid for a vehicle" and "a licensee." If the term "sold to" does not necessarily refer to the antecedent "any person [who] is not paid for a vehicle," the identity of the seller becomes uncertain. (See Civ. Code, § 3534 ["Particular expressions qualify those which are general"]; In re Marquez (1935) 3 Cal.2d 625, 629 ["to ascertain the meaning of the statute, the phrases used therein must be construed in connection with the phrases with which they are associated"].) If the phrase "sold to" does reference as the seller the person who sold the vehicle but has not been paid for it, all parties covered by section 11711, subdivision (a)(3), are fully identified, and any ambiguity is avoided.
In this regard, we note that our construction of subdivision (a)(3) of section 11711 is consistent with the contemporaneous administrative construction of the legislation that added the language in question. (Stats. 1959, ch. 1827, § 7.) The director of the Department described the proposed legislation (Assem. Bill No. 1718 (1959 Reg. Sess.)) in a memorandum to the Governor, dated June 29, 1959, as follows:
"THIS IS A DEPARTMENTAL BILL.
". . . . . . . . . . . . . . . . . . . . . . . . . .
 "The amendment to 1711 is to permit a person to collect on the dealer's bond in the event he sells a vehicle to a licensed dealer and does not get paid for it. The added language is `is not paid for a vehicle sold to and purchased by a licensee.'"
This analysis by the Department plainly identifies the seller
of the vehicle as the party to be protected by the amendment to section 11711. As stated in People ex rel Lungren v. SuperiorCourt (1996) 14 Cal.4th 294, 309:
 ". . . `Although not necessarily controlling, as where made without the authority of or repugnant to the provisions of a statute, the contemporaneous administrative construction of [an] enactment by those charged with its enforcement . . . is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized.' (Coca-Cola Co. v. State Bd. of Equalization (1945) 25 Cal.2d 918, 921)."[3]
We conclude that a finance company does not have a statutory right of action against a surety upon an automobile dealer's bond when the dealer defaults on his or her loan from the finance company for the purchase of a vehicle at an auction.[4]
[1] All further references to the Vehicle Code are by section number only.
[2] "Division 3" concerns the registration of vehicles and certificates of title.
[3] The Department continues to regard subdivision (a) (3) as protecting only the seller — the person who is not paid for his or her vehicle. (Letter from Senior Staff Counsel Francis Coats to Deputy Attorney General Gregory Gonot, March 14, 2006 ["The DMV opinion is that a financing agency that loans money to a dealer for the purchase of a vehicle and is subsequently not repaid on the loan does not have a right of action on those facts for recovery from the surety on the dealer's bond under subdivision (a) (3) of Section 11711 of the Vehicle Code"].)
[4] While a finance company could not establish a claim under subdivision (a)(3) of section 11711, it could establish a claim under subdivision (a)(1) or (a)(2) if additional facts specified in these provisions were present. In such case, the finance company's claim against the surety upon the dealer's bond would be governed by the terms of section 11722, which generally subordinate the claim of a finance company to those of other claimants.